**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STEPHANIE TOLSON,

　　　　　*Plaintiff-Appellee,*

v.

MARRIOTT INTERNATIONAL,
INCORPORATED,

　　　　　*Defendant-Appellant.*

No. 00-2311

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-99-1752-A)

Argued: April 4, 2001

Decided: May 9, 2001

Before WILKINS and KING, Circuit Judges, and Frederic N.
SMALKIN, United States District Judge for the District of
Maryland, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Charles Perry Monroe, DUNCAN & HOPKINS, P.C.,
Alexandria, Virginia, for Appellant. Kenneth David Bynum, BYNUM
& JENKINS, P.L.L.C., Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Marriott International, Incorporated (Marriott) appeals a judgment against it in a negligence action brought by Stephanie Tolson, arguing that the evidence was insufficient, that prejudicial evidence was erroneously admitted, and that the amount of the verdict is excessive. Finding no prejudicial error, we affirm.

I.

Tolson was a paying guest in a Marriott hotel in Arlington, Virginia on the evening of January 26, 1998. She complained of the smell of cigarettes in her room but was advised that there were no other rooms available and that an ozone machine would be employed to clean her room the next day. She was also informed that, for health reasons, she could not be present while the machine was running.

After Tolson left her room the next morning, Esperanza Jimenez, a Marriott housekeeping supervisor, placed an ozone machine in Tolson's room. She testified that she set the machine by timer to turn off in twenty minutes, and she never returned to the room to confirm that the machine had turned off.

Tolson returned to her room after 6:30 that evening. Immediately upon entering, she sensed Clorox-like fumes. And, when she entered the bathroom, she noticed a black and blue square metal machine that was switched on—although the timer was not on—and the machine was emitting a smell. By that time, her throat was burning, her eyes were watering, and she became nauseated. When she called the front desk, she was placed on hold for five minutes while her problems continued. Tolson then proceeded to the hotel lobby and reported the problem at the front desk. After hotel personnel removed the ozone machine and provided Tolson with another room, she was instructed

to collect her belongings from the first room. The total time she spent in the room for both visits was about 20 minutes.

Later that evening, Tolson was transported to the emergency room, where she was diagnosed with "[a]cute pulmonary chemical irritation." J.A. 331. Her family doctor examined her the following weekend and referred her for diagnostic testing, which revealed that Tolson was suffering from asthma and thickened vocal cords. Tolson was then referred to a board-certified occupational disease physician, Dr. Laura Welch, for an examination.

Tolson subsequently filed this negligence action against Marriott. Tolson alleged in her complaint that an Aqua Sun 5000 ozone machine was used by Marriott on the day of the incident. Marriott answered, denying improper use of the machine. Marriott also stated in a discovery response that the Aqua Sun 5000 was not defective.

At the conclusion of discovery, Marriott's counsel informed counsel for Tolson that Jimenez had been shown the Aqua Sun 5000 and stated that it was not the machine used in Tolson's room. She remembered the machine as being smaller and red in color. Based on the uncertainty regarding whether the Aqua Sun 5000 was the machine used in Tolson's room, the parties agreed that the Aqua Sun 5000 would not be admitted into evidence, and Tolson's attorney requested that Marriott amend its written discovery responses referring to that machine. Marriott made no amendment, however. At trial, Tolson's counsel read into evidence several written discovery responses from Marriott referring to the Aqua Sun 5000.

Dr. Welch testified at trial that ozone is a known irritant to people who have a preexisting inflammatory disorder. She testified to a reasonable degree of medical certainty that the ozone exposure exacerbated Tolson's preexisting condition of chronic rhinitis, causing persistent postnasal drip onto her vocal cords, resulting in the thickening of the vocal cords and hoarseness. Dr. Welch also testified that Tolson's exposure to ozone led to her asthma. Dr. Welch reached her conclusions by examining Tolson and reviewing the medical records and diagnostic tests as well as the medical and scientific literature on accepted levels of ozone as established by the EPA. Dr. Welch testified that Tolson would probably need to take several medications for

the rest of her life. She also testified that it would be advisable for Tolson to stay home on days when the ozone level in the air was high.

During the trial, Marriott moved unsuccessfully for judgment as a matter of law, and the jury returned a verdict in favor of Tolson for $120,000. The district court denied Marriott's post-trial motions.

## II.

Marriott first argues that the district court erred in denying its motion for judgment as a matter of law on the ground that the evidence of negligence was insufficient. We disagree.

A motion for judgment as a matter of law should be granted if the district court determines that the nonmoving party "has been fully heard . . . and [that] there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). We review the denial of a motion for judgment as a matter of law de novo, viewing the facts in the light most favorable to the nonmoving party. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir. 1999).

Here, the evidence was sufficient to support a conclusion by a reasonable jury that Jimenez was negligent in failing to ensure that the ozone machine was turned off. Marriott contends that the only reasonable conclusion from the evidence is that Jimenez set the machine to turn off automatically by timer and this was all the reasonable care required of her. We disagree and conclude that the evidence gave rise to a reasonable inference that Jimenez never set the timer.

Marriott employee Aziz Fenjiro testified that in addition to the timer, the ozone machine used in Tolson's room also had "a manual on and off." J.A. 1171. Additionally, Tolson testified that when she entered her room on the evening that the machine was used, the machine was operating and the timer was not set. Finally, Marriott stated in a discovery response that the ozone machine was not defective. From this evidence, it could reasonably be concluded that the

ozone machine was still on when Tolson entered the room because it had been turned on in manual, rather than timed, mode.*

## III.

Marriott next contends that the district court erred in denying its motion for judgment as a matter of law on the basis that Tolson's evidence was insufficient to prove that the exposure to ozone proximately caused her injuries. Specifically, Marriott argues that Tolson did not produce any measurements regarding the amount of ozone to which she was exposed. We conclude that the evidence was sufficient. Dr. Welch formed her opinion as a result of her review of medical records and diagnostic tests and the known problems associated with ozone exposure, which was sufficient to establish proximate causation. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263-64 (4th Cir. 1999) (holding that differential diagnosis constituted sufficient evidence that chemical exposure proximately caused injuries in the absence of quantification of the chemical exposure).

## IV.

Marriott next maintains that the district court committed prejudicial error by allowing counsel for Tolson to mention the model of the machine that injured her, contrary to the parties' agreement that no such mention would be made. Even assuming that the district court erred, we fail to see how reference to a specific model name prejudiced Marriott.

Marriott argues that "[t]he mentioning of the specific machine, followed by defense counsel's reference that the machine could no longer be found by Marriott, gives the impression that the defendant had engaged in evidence tampering." Br. of Appellant at 21. However, we can discern no reason why the jury would have believed that Marriott had a motive not to present the machine. Furthermore, even had the actual model of the machine not been mentioned, Jimenez testified

---

*For the same reasons, we reject Marriott's argument that the district court erred in allowing counsel for Tolson to refer to a "continuous use" control on the ozone machine when no evidence was presented that such a control existed. J.A. 1276.

that she had not seen the machine since the incident and did not know where to find it. Accordingly, there is no reason to believe that counsel's reference to the model name had any effect on the outcome of this trial.

## V.

Marriott finally argues that the district court erred in denying its motion for new trial on the basis that the amount of the $120,000 verdict was excessive. We disagree. Especially considering the evidence that some of the effects of the ozone would be long-term or permanent, we cannot conclude that the amount of the verdict was excessive.

## VI.

In sum, the judgment in favor of Tolson is affirmed.

*AFFIRMED*